Thank you, George Stewart, and may it please the court. The Constitution gives Texas leeway to make policy decisions about how best to conduct its elections. Chapter 82 reflects the Texas legislature's studied policy determination to generally require everyone to vote in person while making an exception for the elderly and for certain other groups, like the disabled, and offering them the option to vote by mail. The Texas legislature felt that was the appropriate policy balance to strike between offering more choices to the elderly while minimizing the risk of voter fraud that comes with mail and balloting. Plaintiffs disagree with the legislature's policy decision, and they now ask this court to override it just weeks before a major national election. Their view of the 26th Amendment is that when Texas agreed to let the elderly vote by mail, it necessarily committed itself to allowing everyone else to vote by mail, too. But plaintiffs are wrong on the merits, and in any event, federal courts don't have jurisdiction to enter the relief they want. I will briefly begin by addressing the two jurisdictional defects, sovereign immunity and standing, and then I will turn to the merits. First, the plaintiffs' claims are barred by sovereign immunity largely for the reasons this court adopted in the City of Austin case and the Inree Abbott case just a few months ago. The most straightforward way to put it is that if the court were to issue an injunction ordering the governor or the secretary of state or the attorney general to allow everyone to vote by mail, not a single one of those executive officers would do anything differently. Their day-to-day would not change at all. Ex parte Young allows federal courts to enjoin state officers to halt their ongoing violations of federal law. Ex parte Young says that the defendant must have some connection to the challenged action, and certainly the motions panel, which I would hold does not bind us. We'll see if the panel agrees with that. It said there was a connection used out of the lobby in some other cases. Sounds right to me. Tell me why I'm wrong. Well, Judge Stewart, or I'm sorry, Judge Southwick, my apologies. Judge Southwick, I think the clearest... I'm confused. That's all right. I think the clearest explanation for why that's not correct is set out in the City of Austin case and in the Inree Abbott cases. Both of those cases involve the same situation that we're seeing here. We're seeing in all of these cases plaintiffs unhappy with state law, thinking the state law is unconstitutional, and they're challenging it by simply naming some executive officers. Ex parte Young itself doesn't allow that, and City of Austin and Inree Abbott confirm that you need more than some theoretical connection to the enforcement of state law. Now, the panel decision, Judge Southwick, which you referenced a moment ago, the state panel decision, leaned heavily on the OCA Greater Houston case. But I don't think that this court should similarly rely on OCA Greater Houston. That's distinguishable for a couple of important reasons. First, OCA says nothing at all about sovereign immunity. So it has no bearing on the sovereign immunity analysis that's now before this court. That's because OCA, just like the recent Fusilier case, arose under the Voting Rights Act, which OCA believed abrogated state sovereign immunity. Second, OCA's discussion of standing as to the Secretary of State is dicta because it's not necessary, the conclusion that there was federal jurisdiction in that case. And the reason is that the state itself was a party in OCA Greater Houston. So the court there seemed to be reasoning that when the state itself is a party, and when you have a facial challenge to a state law, then there's no standing problem because traceability and addressability can be satisfied one way or another. Those considerations are not in play here in light of City of Austin and in Rehabit. At the end of the day, neither the governor, nor the Attorney General, nor the Secretary of State are doing anything to enforce 82.03. All the plaintiffs have pointed to is the exact type of theoretical connection to enforcement that City of Austin and in Rehabit say is not enough. Unless the court has further questions about the jurisdictional bars, I'm happy to shift gears and discuss the merits of their claims. The order below rests on a fundamental misunderstanding of the 26th Amendment. The 26th Amendment forbids a state taking action to deny or abridge the right to vote based on age. In McDonald, the Supreme Court squarely rejected the notion that offering some groups the option of voting by mail abridges the voting rights of other groups. Mr. Hawkins, you have read that a bit more carefully than I have. I see McDonald's limitation as they seem to be talking more about deny with the 26th Amendment, as you just pointed out, also talks about abridged. Isn't the terminology in McDonald more consistent with denying and not with limiting in some way? I don't think so, Judge Southwick, and the best clue is that McDonald put it to make voting, quote, more available to some groups, end quote, doesn't abridge the other group's right to vote. Now, Judge Southwick, even if I'm wrong about that, even if McDonald is just a denial case, we still prevail under Harmon, which described the idea of abridgment as erecting a barrier. That means- Let me ask you this, what do you do? You argue a lot about McDonald and there's a lot in the briefs, but, you know, we've got a ton of briefs here, but let's just say there's an argument made on the other side and in some of the briefs that even if McDonald, not even, but McDonald says what it says, but even the Supreme Court backed away from it a couple of decisions later in other opinions limited to, you know, the pretrial inmate scenario, et cetera, but more specifically, one of the briefs says that even the motions panel does not address American Party of Texas versus white, which the Supreme Court ruled in 1974. And the argument in the briefs is that, that, you know, you know, leaps over McDonald in terms of the reasoning and in fact rejects McDonald's reasoning. And moreover says you, meaning the state at the motions panel level, et cetera, didn't address, you know, American Party. So two parts of the question, one, what do you do with the argument made in a variety of cases and even some other circuits that have been argued to us that putting aside what McDonald actually says and holds that for these purposes of this kind of argument, the Supreme Court is not still, you know, latching on to that or is abrogating. And secondly, what do you do with American Party of Texas or other cases that will at least cast some question about the forcefulness of the argument you make about McDonald? I know that was convoluted asking, you know, I apologize. No, Judge Stewart. Let me see if I followed the question. Let me try to answer those two parts of the question this way. Even if we were to take McDonald out of play, and I'll start by saying McDonald has never been abrogated. The Supreme Court doesn't secretly overrule decisions, it overrules them explicitly. McDonald is still very much binding law as the state panel correctly held. But even if we take McDonald out of the equation, the plaintiffs here still lose for a couple of different reasons. First, cases like Harmon and subsequent cases like the O'Brien case indicate that a bridge requires the construction of a barrier to the enforcement of a right. And what's lacking in this case is that when the state of Texas gave the option of voting by mail to senior citizens, but not to everybody else, it did not erect a barrier to the exercise of the franchise for everybody else. That's the first point that I'll make. And that I think addresses the subsequent 1974 case too. Second, even if I'm wrong about that as well, the plaintiffs and the record on appeal in this court have not put on any evidence that outside of pandemic circumstances, voting by mail is any less burdensome than voting by personal appearance. Of course, in district court to them, this case was all about the pandemic. Now in the fifth circuit, they have changed their approach to this case, and they now say that 82.03 has been unconstitutional since 1971. But the problem with that argument is that number one, that's not what they were saying in district court. But number two, they have not put on evidence to back up that claim. And indeed, this court suggested in VC, Judge Stewart, that there is reason to think that voting by mail might actually be more burdensome than voting by personal appearance. So in light of that evidentiary defect, we should still prevail. Now to be- Well, let's take you where you are. You know, just like I said, it's a lot going on this case, hard to get it sandwiched in. But putting the pandemic aside, I know that's rhetorical and whatever else, it's hard to put the pandemic aside, but not dealing with the pandemic related issues. Just take the 26th Amendment itself straight on. You're a tech sualist, if there ever was one. And I don't mean that disparagingly at all, just, you know, you're very learned and so forth. But just taking the 26th Amendment itself, which doesn't say anything about COVID and anything else. But in the time, take that straight on, you know, the 26th Amendment itself, the language in it. Judge Sopwith started you there in terms of, you know, some of the other cases talking about lessening, abridging, I mean, just looking at the language of it and the fact that when it was adopted historically, you know, language was, you know, married up, so to speak, with the 15th Amendment. So give me your textual argument is what I'm giving you the approach. Let me hear your textual argument. Thank you, Judge Stewart. I'll begin with the text. The right of the citizens of the United States who are 18 years of age or older to vote shall not be denied or abridged on account of age. And I think there's a couple of key terms in the text of that amendment. Number one is denied or abridged, and number two is the right to vote. So if we're performing a purely textual analysis outside of any doctrine, we've got to ask what those terms mean as they were originally understood when the amendment was enacted, as we know from, uh, ratified, as we know from Heller. Now, we've learned from subsequent, from cases around that time, including McDonald, which was decided only two years before that text was passed, that it does not deny or abridge the right to vote when you make more voting more available to some groups as opposed to others. To abridge the right to vote does not mean giving other groups more options. It means taking away something from a certain group. We know that from the cases I referred to, we know that from Harman and most directly from McDonald itself. So if this court wanted to perform a purely textual analysis, the way it should do so is it should say, what does it mean to deny or abridge the right to vote as that was understood in 1971? And we know from the cases around that time and from the language of that amendment, that offering groups, other groups, more choices doesn't abridge anybody else's right to vote. I hope that satisfies you, Judge Stewart, and if it doesn't, I'm happy to answer further questions. No, no, no. You're, you're fine. As I said, I know you're trying to cover a lot. I just didn't want to get away from the 26th Amendment and the textual argument. Thank you. Let me pick up on that, Mr. Hawkins. Did I step on somebody? I'm sorry. I thought I heard somebody else speaking up. Just following up a little bit on that, looking at 1971, you say McDonald may be relevant in understanding what abridge is, but potentially it only tells us what denial means. In understanding what abridge means, I've tried to figure out what other Supreme Court decisions would be helpful in this. Can you point us to a Supreme Court decision? Maybe you mentioned Hiller already. Maybe that's one of them. Is it at all relevant what was going on in 1971? Obviously, 15th Amendment, 19th Amendment, 24th Amendment were trying to eliminate restrictions that existed. You seem to be saying that the 26th Amendment was embracing restrictions that existed, restrictions you want to equivalent with my word, maybe it's the wrong word, but qualifiers that existed, but only wanted to lower and expand, expand the age period for voting. How do we look at, under what authority would you say we can look at what was going on in 1971? I think the best case for that is Hiller versus District of Columbia. That's the 2008 Supreme Court decision saying that constitutional amendments must be read according to their original public meaning. And part of the original public meaning analysis looks into what the understanding of those terms was at the time that they were enacted and what the right to vote meant as understood in 1971. So I would cite Hiller for that proposition, Judge Southwick. I see that I have very limited remaining time. With the court's permission, I'd like to just briefly touch on the remedy that the district court ordered, which is an independent basis for reversal. Madam Clerk, give Mr. Hawkins two minutes on his time and similarly, we'll give you to Mr. Dunn so you won't have to choke off all your thoughts, Mr. Hawkins. I asked your question and followed you up a little bit. Thank you, Judge Stewart. The final point I'll make in my now remaining two minutes is that even if I'm wrong about everything I've said so far, about the 26th Amendment and everything else, the district court's remedy is impermissible. The district court determined that the proper way to address the alleged constitutional defect in 82.03 was to extend its benefit to everyone. But both the Texas Supreme Court and the Texas Code Construction Act say otherwise. The Code Construction Act does not allow the court to merely sever the language restricting mail-in voting to the elderly because that would render the other parts of Chapter 82 superfluous. Specifically, 82.01, 02, and 04 would all be rendered superfluous by the district court's remedy. The Texas Code Construction Act says that's not appropriate and indeed, in May, the Texas Supreme Court in the In re Texas decision recognized that the Texas legislature had carefully crafted Chapter 82 to reject universal mail-in balloting. Now, that means that if 82.03 is constitutionally defective, the proper remedy is to eliminate that statutory exception in its entirety. And the Supreme Court has recently indicated, even just a couple of weeks ago, that courts should not rewrite state election laws over the objection of state officials a mere nine weeks before a major national election. If we follow that approach, if we would agree with your friend also on the screen, Mr. Dunn, said that we will eliminate the special privileges so everybody's under the same limitations on getting absentee ballots, where are we in the election already? Absentee ballots have already been sent to the elderly under this broader permission and does that skew the result or is it too early for them to be requested? Sure, Judge Southwick. I'm happy to walk you around for the timeline if I may. I see I'm out of time, but if I may answer your question. I'll let Judge Stewart do it. Yeah, go ahead. So voters can begin requesting mail-in ballots on January 1st. September 19th is the date on which the early voting clerks mail ballots to certain members of the armed forces and merchant marines and individuals living abroad. The deadline by which an application to vote by mail has to be received is October 23rd, subject to certain exceptions. So that's the major date that we're approaching in terms of receiving an application to vote by mail. And of course, November 3rd is the election itself and in-person early voting begins on October 13th. Thank you. Thank you, Judge Southwick. Thank you, Your Honor. All right. All right. Thank you, Mr. Hopkins, for your responses. You, of course, have preserved your rebuttal time as stated. All right. We shift to you, Mr. Dunn. May it please the court. Thank you, Your Honor. My name is Chad Dunn and I represent the Texas Democratic Party, its chairman, Gilberto Hinojosa, and three individual voters in Texas, Shonda Sansing, Joseph Casino, and Brenda Lee Garcia in this important case regarding voting in this upcoming presidential election. As the court has heard, this case is premised at this point in the appellate proceedings on the 26th Amendment. The 26th Amendment is one of four amendments that prohibit discrimination in voting and explicitly say that both the United States and states may not deny or abridge the right to vote. The 15th Amendment does so on race, the 19th Amendment on gender, the 24th Amendment on ability to pay, and finally, the 26th Amendment on age. With regard to those four restrictions, I'll have to respectfully disagree with Mr. Hawkins. The policy debate is over. The framers of those amendments, the ratifiers of those amendments, enshrined those guaranteed rights in the Constitution precisely so that legislatures debating the policy of them could no longer take action that's violative of those amendments. Now, your honors have asked about cases involving the 26th Amendment, and to be candid, of course, there's no on-point U.S. Supreme Court case considering the 26th Amendment claims. But there are a number of cases that were handed down in advance of the amendment's adoption in 1971 that gave some indication about why Congress included the term deny and abridge. One of those that's been spoken about is Harmon. In that case, a state, in lieu of charging a poll tax, allowed citizens to vote, but in order to do so, had to fill out a certificate. And the court said, even though that's a minor burden, it is still an abridgement. It's an end run around the prohibition on discrimination on the basis of having a poll tax. And there are other cases, Reno versus Bossier-Paris, the U.S. Supreme Court says there, this necessarily draws a distinction between what one group of rights is and what the other group of rights is. And as Justice Black said in the Katzenbach decision, any method of abridgement, no matter how, however subtle, is captured by the deny and abridge language. In that case, he was talking about the 15th Amendment. So when the drafters of the Constitutional Amendment at issue here had the Supreme Court decisions available to them and intentionally included that language, therefore, we submit that we don't get into the intent or the legislative purpose behind the amendment. But I will spend a second on that since it's been raised. Congress first tried to lower the voting age to age 18 by act of Congress. This was, of course, in reaction to the Vietnam War, a slogan at the time, old enough to fight, old enough to vote. And Congress reacted by passing a bill explicitly lowering the voting age to 18. In Oregon versus Mitchell, the U.S. Supreme Court struck that down. Instead, it found that Congress lacked constitutional authority to adjust the voting age for state elections. Therefore, the 26th Amendment ratification process began. And if the court wants to look at legislative history, the Senate report 92-26 talks about what the Senate considered in adopting the 26th Amendment and how it explicitly chose not just to lower the voting age, but to enshrine a promise, a guarantee of right against age discrimination in all facets of voting. So now I'd like to turn to the cases that are on point. And that's the slew of cases that came after the ratification of the 26th Amendment. One that I think this court ought to pay closer attention to is the Walgren First Circuit case from 1975. Now, that case involved a city scheduling its elections when students at the local university were expected to be out of town. And the argument of the government then, just like it is now, is, well, if those students want to register where they go to school, they can choose to vote absentee. And the First Circuit found that is abridgment under the 26th Amendment. Then there are a number of state court cases. And my apologies to my French-speaking friends, but the Jolicoeur case at the California Supreme Court also addressed this issue of whether or not students could register where they were going to school and instead required them to do so back where they were raised. And again, the government argued, look, they can vote absentee if they're away from their childhood home. And the court said that's abridgment under the 26th Amendment. And the Colorado Supreme Court and Colorado Common Cause said that you can't prohibit individuals from circulating petitions based on their age, because that is part and parcel of the right to vote and is prohibited by the 26th Amendment. Mr. Dan, let me make sure I understand where your argument takes us. It seems to me what you're arguing that the entire range of words, and there aren't many of them in the 26th Amendment, leads to concluding that any privilege for older people to vote, whether it's by absentee or whatever way a legislative imagination might come up, any of those special privileges are unconstitutional, crossable, and henceforth and forevermore. You can have other limitations, maybe. I don't think you're challenging these. If you're out of town, you can vote absentee, whatever. But anything based on age is going to fall under the 26th Amendment. Is that your position? I wonder if you are. You were frozen for a moment. Did you hear the question? I wasn't sure we were still communicating. Yes, sir. And the answer to the question is yes, with a caveat. There is no question that when there is a facial restriction in statute, whether it's gender, age, race, ability to pay, then it is struck down. It is prohibited by the amendment. Now, does that mean that government is without options to facilitate voting to certain groups of individuals? No. And I'll give the court an example. Let's say, for example, the government were to decide, local officials or otherwise, to place a polling location next to an elderly care facility or an older community in order to facilitate their ability to vote. As long as under that circumstance, there was no purpose and there was no effect of discriminating on younger voters, that's absolutely permissible. But what the state can't do by statute is say a bracket of people based on their age get a voting benefit that other people do in the same way that if Congress or the legislature were to pass a bill that said presumably women are at home during the day, we want them to vote from 9 to 3 and the men coming home from work are going to vote in the shoulder hours, that would be prohibited around the 19th Amendment. And under the state's argument here, if it goes that way, it goes the other way. Imagine if a legislature decided that individuals, older individuals, are at times perhaps subjected to manipulation in their vote, perhaps they don't have the mental capacity to vote. We're going to require them to vote in person, and everybody under the age of 65 will also have the advantage of voting by mail. That way, we can make sure there's not something untoward going on with the older voters. That would be prohibited. Let me put this in a different context and you pull it back out to make it fit where you want it to be. Let us assume the evidence would be, and I don't think it's in this record, but that the contemplation of Congressmen and when it sent this out to the states is that there are certainly certain existing privileges for older voters, older voters, just as we have today. Maybe widespread, I have no idea. And when they said, deny or abridge or right to vote shall not be denied or abridged based on age, that was the landscape, that was the legal landscape for that terminology. And that's the way it's been for 40 years. My math is off, but almost 50 years. How does that understanding get ignored in an area of the law that is very poorly developed? Judge Smith, I forget exactly how he put it, but he did say the 26th Amendment's not been a major player or some sort of thing, issue like that. And this is one of the few places it would be a player, it seems to me. A few other cases you have cited to us. What is wrong with the analysis I laid out, that we look at sort of the understanding of our founding parents when the 1971 Amendment was ratified, whenever it was sent to the states. And the understanding was this was the reality of voting and that was not being attacked by this amendment. What's wrong with that? Well, two responses, Your Honor. First, and I agree, there's not this evidence in the record, but I'll have to disagree with you respectfully that it was the history of this country that there was vote by mail for individuals. Indeed, in the first century of this country, vote by mail was largely... I'm not talking about that. I'm talking about 1960s leading up to this amendment. So we don't have to get into that much ancient history. OK. And on that basis, we follow the text with regard to our constitutional amendment. And the U.S. Supreme Court said in the Atlanta Cleaners versus Dyers case and a 1930s era case that each of the amendments that use the same language are interpreted the same way. So if we go down the road, Your Honor, suggesting we're going to treat the 26th Amendment separately and differently than we're treating the 15th Amendment. And as Judge Ho said on the motions panel, presumably the law would prohibit allowing a vote by mail to white citizens, but denying it to African-American citizens. And there's no question the 15th Amendment would require striking down that provision and age is no different. Also, I think it's important to note in response to Your Honor's question that the point of these amendments is to not allow laws to shape the electorate so that the electorate across the board has an equal opportunity to engage in the political process. On these four matters, there's no longer a policy debate. And I'd like to transition now and talk about McDonald for a minute, because McDonald was I'll have to again disagree with Mr. Hawkins. It was to me expressly overruled in O'Brien and O'Brien. The court said under McDonald, it even talks about how we've stepped away from McDonald since its issuance and that McDonald was decided more as a failure of proof rather than a decision on law. The Supreme Court also, in advance of O'Brien, issued the Goosby decision that questioned McDonald. So those cases are a matter of 14th Amendment jurisprudence. And if we're to decide that the 21st Amendment was adopted under certain assumptions at that point, then what we're really saying is that the 26th Amendment did nothing other than lower the voting age. The New Jersey Supreme Court, the First Circuit, several of the other decisions that we we cite in our case all said, I think one of the quotes was, we find it difficult to believe that the 26th Amendment provides no additional relief than did the 14th Amendment. And I think that was the central error that the motions panel made is it treated it as a McDonald 14th Amendment case rather than an explicit prohibition under the 26th Amendment. But again, even if we're talking about McDonald, it's been stepped away from. And in the case, as Judge Stewart mentions, American Party of Texas versus white, the court there explicitly found that individuals in Texas that were denied the ability to vote for minor party candidates absentee were had their rights violated under the 14th Amendment. Well, counseling that overstating it just a bit of remanded for further fact finding, determined that district court had been too cavalier in its in its ruling. So it does seem to me that the issue was still open in American Party of what to do with that. I understand there was a remand, your honor, but the holding the holding sentence here in Section five is it is plain that permitting absentee voting by some classes of voters and denying the privilege to other classes or otherwise qualified voters in similar circumstances. Without affording a comparable alternative comparable alternative means to vote is an arbitrary discrimination, violative of the Equal Protection Clause. We don't acknowledge all things out of that opinion as to what it means. Let me move you to a different pair of cases or a different doctrine. And that's Anderson verdict, which generally applies to election restrictions of one sort or another. Obviously, your argument is saying 26th Amendment is places this particular kind of restriction outside of that. Well, let's say we air and somehow another apply Anderson verdict. How does that play out for you? Well, we believe that under the pandemic circumstances, at the least, we would prevail under Anderson verdict. You would you would even consider that. Can we even consider that now in the way you've structured your case to us? No, at this point in time, we're asking the court to decide the case on the 26th Amendment. We've had a decision that this panel is going to render. How does Anderson verdict play out in it? We do not believe the Anderson verdict applies to the 26th Amendment analysis on this. Understood. And your arguments there. And you don't need to. I mean, you certainly can if you answer my question. But I'm just asking straight up if we make that error in your viewpoint and apply that those principles. How does that how does that affect the outcome of the case? Well, we've asked the court to remand on the additional claim. So if we do not prevail under the 26th Amendment, we do not prevail in this appeal. And the rest of the claims are remanded to the district court for trial on the merits. OK, proceed. Now, I'd like to take a minute and address the the remaining three factors on the issuance of a preliminary injunction. In this case, there's irreparable harm because the plaintiffs and other individual voters that are members of the Democratic Party are having their rights abridged there. And in some cases, they'll be denied. Look, everything we know from economics and political science is that more difficult you make it to vote, the fewer people that go and do so. What we've seen in recent elections is people standing in line for hours on end. The state's restrictions that are still under preparation for November do not require the wearing of masks and polling locations. So now we're asking individuals to go and vote in person, potentially stand in line and subject themselves to the current pandemic circumstances. Now, the state says, well, we're doing what we can to make it better. But one that assumes that it is, in fact, dangerous. We've gone from inconvenient to dangerous, not because of the state's fault, but because of the pandemic. And we're asking voters, certain ones of them get excused from having that endurance test and others based purely on their age are suffered or to suffer through it. The fact of the matter is, is that when individuals' characteristics are used by the government to divvy out who gets to vote, those are prohibited by these four constitutional amendments. Now, what's the state's injury that they argue? First, they argue that there's necessarily fraud that comes in with vote by mail. One, I think it's worth pointing out that come November, Texas is going to be one of two, three, maybe five at the maximum states that don't allow absentee voting under these circumstances. We have states that never did any meaningful absentee voting outside of what federal government requires in the MOVE Act that have gone towards absentee voting and vote by mail process for their entire state. The whole, it's as if a hurricane blew through the city of Houston, where I come from. The rules change. As you can see, the states are attempting to add an extra week to the early voting schedule. That's been challenged, though, in state court. The state's attempting to offer curbside voting for some people, even though the disability definition under that statute reads essentially the same as the disability definition interpreted by the Texas Supreme Court. In this case, all of the rules are in flux. And if older votes can be tolerated in these other 45 states, plus the rest of the folks, plus under 65 age, and if it can be tolerated in this state, then what makes those votes so much more valuable that they're worthy of the potential? Voter fraud that the others get excluded from it. The state put on no evidence of widespread voter fraud. And as this court found in the V.C. en banc decision, you can't weigh voter fraud as a talisman against constitutional protections. The other interest, excuse me, the other interest that the state argues is that any time its enactments are infringed upon by a federal court order, that's an injury. And indeed, there's authorities to support that. But let's not pretend here the legislature of Texas has not decided what vote by mail rights there ought to exist under these circumstances. The circumstances in which the court in which the legislature considered this back decades ago were completely different. As I mentioned earlier, everything's changing, including this very proceeding that we're doing. But let me ask you, let me ask you two lines of question one address Mr. Hawkins argument about the Texas Code Construction Act. I might not have written down sections eighty two point oh three or whatever. But anyway, address his argument concerning that. I think I got he said the remedy that the district court issued would we'd have to vacate the entire section. I may not be accurately saying exactly the way he said, but you heard it like I did. So just address that that argument. And then he argued earlier about, I guess, the practical effect that none of the election officials would be doing anything different were we to issue injunctions. So those two parts of his argument, if you got if you just respond to those. Yes, your honor. So first on the statutory Code Construction Act, I beg the court to take a look at the Texas government code section. Three eleven zero three two paragraphs A, B and C, which is the whole section. And C is the one that's applicable here. The legislature decided as a matter of policy that were this court to strike down an individual right or benefit subject based on an individual or group that the rest of the statute, to the extent possible, shall remain in effect in order to provide relief. In this case, all the court need do is take section eighty two point zero zero three and strike out the last few words about the age of sixty five. The rest of the statute remains in effect. All of the signature matching provisions, all of the fraud protection measures, the criminal offenses, every other part of the vote by mail scheme in Texas remains law. Thank you. I think he alluded to and somewhere in the briefing, I guess the pushback on that was one of the Supreme Court cases from this summer. The name is escaping me in which there's some language in there. The name is escaping me now. Hopefully, you know what I'm talking about. There was an opinion this summer that sort of spoke to the idea of not sort of rewriting the statute. You know what I'm talking about? What's the case? Well, there have been several election cases this summer. I don't I don't I didn't hear it at Mr. Hawkins. Well, I find it. Mr. Hawkins, though, there's there's some language in one of the briefs that push back on that notion, saying that I can't remember if it's the chief justice's opinion or a concurring one from this summer that, you know, in the context of that litigation suggested that what you just argued in terms of, quote, all we'd have to do is strike the language from the statute and do that. That's that's what's got my attention is that Mr. Hawkins makes a counter argument. The court has granted cert in a couple of cases, one out of our court, Collins versus Mnuchin on this whole issue about, you know, what's severable from statutes and on and on. Although that's federal statute, I don't mean take you down a rabbit hole, but I'm just trying to key in since this is that was a major part of their argument. He's got rebuttal to make sure we got you down on your view on on these pieces, because some of these are not in the briefs. So that's the value of oral argument. This is, in other words, said simply, you say all we have to do is, quote, sever out this language, blah, blah, blah. He says per Supreme Court. No, we can't do that at that time. So I'm just giving you an opportunity to zing in on that point. We'll have to figure out who's right. All right. Well, I think the case that may be referring to is the RNC versus DNC case out of Wisconsin, and in that case, the court did deny some relief. But it also it's important to point out, did allow some affirmative injunctive relief. That decision was made the day before the election day, and there were various parameters of the state's absentee voting system changes the court had ordered that were allowed to stand. So there's clearly when the Constitution's at play, a enforcement of it leading up to the actual days of the election. You know, we don't have constitutional rights unless we practice them. And if the rule is that we don't have constitutional rights two, three months out from the actual general election, then the four amendments that I'm here speaking of become meaningless. If the state can enact, for example, a fee to charge people because the pandemic elections cost so much more, everybody will need to pay five dollars. That has to be struck down no matter when it's enacted. At the end of the day, this case is about it's about a fair electoral system where nobody has to go through additional burdens in order to vote. Ninety forty five of the other states do this. Texas provision allowing vote by mail for individuals over the age of sixty five violates the twenty six amendment. The injunction ought to be affirmed. All right, thank you, Mr. Dunn. All right, Mr. Hawkins, as I mentioned, you had preserved your your rebuttal time that was the two minutes was Lanyap. So you've got your your five minutes and you're up. Thank you, muted. Yeah. Say something. Can you hear me, your honor? Now, yeah, I think you were muted at first. OK, thank you, Judge Stewart. Judge Stewart, you just asked Mr. Dunn to respond to the argument I made that his remedy would render eighty two point one, eighty two point oh two and eighty two point oh four superfluous. He had no response to that. He didn't address those statutory sections and did not explain why it would be permissible in violation of the Code Construction Act to render those statutory provisions superfluous. And it's the state of Texas case that the Texas Supreme Court decided earlier this summer that indicates the legislature's or that holds that the legislature did not want mail in balloting extended to everybody. That controls the remedy here and it controls or compels the conclusion that the district court's remedy is unlawful. I'd like to address Mr. Dunn's arguments about the 15th Amendment, if I might. If a state were to pass a law saying that white people must vote by personal appearance, but black people can vote by personal appearance or by mail in balloting, that law would almost certainly be unconstitutional under the Equal Protection Clause of the 14th Amendment. It would be a race-based classification, and I doubt that any government could overcome strict scrutiny in justifying that race-based classification. But the 15th Amendment would not prohibit that law because that law does not deny or abridge the right to vote within the meaning of the 15th Amendment. And I would say the same thing as to sex in the 19th Amendment. I would say the same thing as to a poll tax in the 24th Amendment. My view that I'm advocating today reads all of those amendments harmoniously. And in all of them, there is no denial or abridgment of the right to vote. And Mr. Hawkins, you argued that the 26th Amendment has no import on its own. In other words, if somebody was bringing, you know, an equal protection clause, we didn't have a 26th Amendment, an equal protection claim, et cetera, and trying to, you know, fit it in under the 14th or 15th or whatever, then we'd have to look at all equal protection jurisprudence, et cetera. So the other side argues, OK, got the 26th Amendment standing on its own. So in some of those other cases, they were doing the equal protection analysis because equal protection claims were made. Whereas here, the claims are coming straight in on the 26th Amendment, its language straight in, made, you know, adapted based on the other amendments. And so so, you know, the argument is that the 26th Amendment has some force of its own, separate and apart for whether other claims might be made, you know, under 14th Amendment or something else. So, you know, I start where, again, where I was initially saying, OK, straight on textual argument about the 26th Amendment. McDonald and some of the other cases talked about denial. OK, clear, we don't have denial here. So, you know, we're we got in the bullseye, what does a bridge mean in the language of the statute that was chosen to be to be put there? So, you know, what's up with that? What's up with that, Judge Stewart, is that Harmon, O'Brien, Goosby and McDonald itself all underscore that to abridge the right to vote means that the state needs to obstruct or construct a barrier to the exercise of the franchise. And all of the cases that Mr. So so so you you would say in this context, we apply what when I took psychology would be called an operational definition. In other words, in this claim, your argument would be we apply an operational definition to abridgement, construct and obstruct a barrier to the exercise of the franchise. So you would be saying that there must be some overt action, for want of a better word, from action, overt action by the state to, in fact, bar, diminish or otherwise. So in this context, when we view the twenty six, you would say we'd have to reason that where there's no evidence of the state barring it, which an argument could be made, that's kind of close to deny. But that's that's your argument. As I as I get it right, as opposed to their argument, is that looking straight at the language that if you got one classification, 65 and something else and apply the language there. So so so my question out all that is to say, are you saying going forward when we are court, look at the words abridge. As opposed to the straight up textual meaning of that word, that we've got to apply some kind of operational contextual approach factored into the text to see, well, if there's no obstruction that or that or if there is you get the drift of my question, I think so, just short. I see I'm out of time. May I respond to the question? Oh, absolutely. Absolutely. Thank you. That's basically correct. Judge Stewart, our view is entirely text driven. The word abridge must mean that the state itself, not some other factor, but the state is erecting some barrier to the exercise of the franchise. All right. And OK, so so what I'm trying to say is I'm not taking a view.  But you would say. I know what we have in this case, but we got some other case coming down the line that's looking at a bridge, but then the straight up language of the Constitution, are you saying the methodological approach? Is to. Construe a bridge based on whether or not there's some quote over action of obstruction, et cetera, going on in the absence of that, there is no abridgement, right? Is that what you're saying? That would be true in all 26th Amendment cases. That would also be true in the 15th, 19th and 24th Amendment cases. If there's another provision of the Constitution that I'm not thinking of that uses a bridge, we'd have to look at it in the light of the original public meaning of that provision. But at core, the answer, Judge Stewart, is yes. OK, well, I wasn't trying to I wasn't trying to cut you off. Don't get me wrong. I wasn't trying to cut you off. I'm just trying to since I got you between the Zoom the Zoom crosshairs to make sure that I'm clear about this, I don't because I don't plan to Google the word abridged to find out what it means. And so I'm trying to see beyond this case that if we're looking at the constitutional provision that uses the words like this shall not be denied or abridged. You know, I'd ordinarily figured, well, it wouldn't be conjunctive or if denied and abridged meant the same thing. So denied is pretty easy to understand. So abridged, if they're what, isn't it more helpful to look at how abridged has been construed where that same language is in another constitutional provision as opposed to what I'm saying. I'm just trying to get a more foundational, definitional sense of what it means. You understand what I'm saying, Judge Stewart, and the cases that Mr. Dunn cited are all entirely consistent with my textual view of abridged. And I'm happy to go through them if your honor would like. But just to take one example, he talks about the Jolicoeur case out of California Supreme Court. You've got state action there that is preventing young people from taking part in the electoral process. The state itself is throwing up a barrier preventing young people from being involved in the electoral process. But just to say the word abridged or denied obviously means, I mean, it's not an abstract term. So, I mean, to say abridged means somebody's done something or failed to do something, right? Right. Well, to abridge something means to take action to lessen or reduce that right. And that's the core of it, Judge Stewart, is that when the state gave this option to the elderly, it didn't restrict the rights of anybody else. It simply offered more options to the elderly. And McDonald says that that is not a denial or abridging of a right. All right. Judge King and Judge Southwick, I mean, the hog, the Zoom screen, but just trying to make sure. Maybe it's time for us to talk about it. I'm good. All right. To Judge King. All right. All right. Your Honor. OK, thank you, Mr. Hawkins and Mr. Dunn for your briefing and argument on the on the question. And certainly you're addressing the court's questions. We appreciate it. We'll conclude the arguments in this case. It'll be submitted and we'll get it decided as soon as we can. Your Honor.